IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FRANCIS C. MBEWE, # 360-922 | * | |
| Plaintiff | | |
| v. | * | |
| C.D.C. [1] | * | |
| WARDEN SOWERS | | |
| WARDEN WEBB | * | CIVIL ACTION No. AW-12-cv-3138 |
| RICHARD DOVEY | | |
| SHIFT COMMANDER SCOTT | * | |
| C.O. II CLEVENGER | | |
| LT. WILLIAMS | * | |
| LT. POWELL | | |
| C.O. II VINSON | * | |
| C.O. II WORGUL | | |
| CPL. HULL | * | |
| Defendants | | |
| | ***** | |

**MEMORANDUM**

Procedural History

In this 22-page civil rights Complaint and attachments filed on October 24, 2012, Francis C. Mbewe ("Mbewe"), an inmate currently housed at the Western Correctional Institution ("WCI"), alleged that: (1) while detained at the Montgomery County Correctional Facility ("MCCF"), corrections staff refused to send his legal mail and his criminal appeal was untimely filed as a result; (2) his personal property, including various legal documents, were lost by corrections staff at MCCF and Maryland Correctional Institution in Hagerstown ("MCIH"); (3) he was banned from/had restricted access to the MCIH law library; (4) on September 21, 2010, a case manager at MCIH wrongfully terminated a telephone call while Mbewe was speaking with his attorney; (5) MCIH officers harassed him and told "the [former] kitchen Clerk" that Mbewe

---

[1] The Clerk shall amend the docket to substitute the name of former Commissioner of the Division of Correction J. Michael Stouffer for that of Defendant "C.D.C."

was a "snitch;" and (6) MCIH staff failed to protect him from harm resulting in his assault on July 10, 2012, by unknown assailants due to his being labeled as an informant. (ECF No. 1, at 10-12). Mbewe requested transfer to the Jessup region, declaratory relief, termination of the "library ban," compensatory damages of $200,000 against each Defendant, and prayed a jury trial.

On November 27, 2012, the court dismissed Plaintiff's claims, except for his failure to protect allegation.[2] (ECF Nos. 3-5). On December 12, 2012, Mbewe filed a Supplemental Complaint in which he complained that he was twice assaulted by unspecified individuals in July of 2012, and he was assigned to cells with known flagged gang members and other dangerous inmates. (ECF No. 9).

Pending Motions

Currently pending before the court are Defendants Stouffer, Sowers, Webb, Scott, Williams, Powell, Clevenger, Hull, Worgul, and Vinson's Motion to Dismiss or, in the Alternative, for Summary Judgment and Mbewe's Opposition thereto.[3] (ECF Nos. 19 & 25). Mbewe has also filed a Motion for a Scheduling Order and Pre-Trial Order or, in the Alternative, for Appropriate Relief to Conduct Discovery.[4] (ECF No. 30). The undersigned has examined

---

[2] Mbewe's claim regarding his legal mail was considered in a separate case, *Mbewe v. Unknown Names, et al.*, Civil Action No. AW-12-3344. (ECF Nos. 3 & 5).

[3] Service of process was not accepted on Defendant Dovey. In light of the ruling of the court, the Complaint against this Defendant shall be dismissed.

[4] Mbewe claims that he filed interrogatories with Defendant Stouffer and the court, which were returned to him for non-compliance with local rules. (ECF No. 30 at Exs. A & B). He contends that he needs the issuance of a scheduling order to "keep the case moving." (*Id.*). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party [has] made an attempt to oppose the motion on the grounds that more time was needed for discovery.' " *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant must file an affidavit or declaration pursuant to Rule 56(d). Mwebe has filed opposition material. He has not demonstrated why discovery is necessary in his

the records and declarations submitted by the parties and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2011). For reasons to follow, Defendants' Motion, construed as a motion for summary judgment, shall be granted.

Standard of Review

Under revised Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility

---

preparation of a response to Defendants' dispositive filing. *See* Fed. R. Civ. P. 56(d). Therefore, his Motion shall be denied.

to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla"of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

Analysis

Defendants claim that Mbewe was assigned to work in the MCIH Food Service Department in April of 2012. (ECF No. 19, Ex. 1, McNamee Decl.). In May of 2012, Mbewe filed an administrative remedy procedure ("ARP") grievance complaining the Dietary Officer Vinson told other inmates in dietary that he was a snitch. (*Id.*). The ARP was investigated and Defendants assert that Mbewe was not cooperative during the investigation. (*Id.* at Ex. 2, Hull Decl.). Defendant Vinson affirms, under oath, that at no point did he tell other inmates that Mbewe was a snitch. (*Id.* at Ex. 4, Vinson Decl.). Defendants Hull, Worgul, and Vinson affirm

that they have no personal knowledge of any specific threat by any inmate to Mbewe. (ECF No. 19 at Exs. 2-4). Although Mbewe allegedly indicated that he was not concerned about his safety, an agreement was reached by all parties to have Mbewe removed from his Food Services assignment.

Defendants alleges that on July 10, 2012, a correctional officer was escorting Mbewe from the shower area when he noticed cuts on Mbewe's face. (*Id*. at Ex. 1). Mbewe informed the officer that he had been attacked by other inmates but that due to his semi-consciousness he could not identify them. He was taken to the MCIH hospital for treatment and later placed on administrative segregation pending an investigation into his claims that he was attacked. (*Id*.) On July 13, 2012, a case management team met with Mbewe to discuss the attack; Defendants claim that he refused to cooperate with the interview and the case management team recommended that Mbewe be removed from administrative segregation in 30 days if no other information could be obtained regarding the attack. (*Id*.)

Defendants assert that on July 14, 2012, Mbewe filed an ARP alleging that Defendants Vinson, Worgul, and Hull failed to protect him from the July 10, 2012 assault, based upon their knowledge of the information contained in his May 5, 2012 ARP. On July 23, 2012, the ARP was dismissed because "it lacked sufficient information to determine a basis for investigation." Mbewe was instructed to resubmit the ARP with the names of his assailants, the location where the attack occurred, and the name of the officer to whom he reported the attack. The ARP was subsequently dismissed because Mbewe failed to resubmit his original ARP. (*Id*.). On August 8, 2012, Mbewe signed a waiver indicating that he had no enemies and that he would return to general population. (ECF No. 9).

In his Opposition, Mbewe again claims that a former kitchen clerk inmate and "numerous other inmates" called him a snitch and "police informant." He specifically alleges that in 2012, he was told by the kitchen clerk, known as "Cash," that Mbewe had snitched on him to a correctional officer about wine found in the kitchen clerk's office. (ECF No. 25). Mbewe asserts that he filed ARPs regarding the threat to his safety and was asked to withdraw or "sign off" on the grievances. He alleges that he refused to do so and seemingly complains about the haphazard manner in which the ARP was investigated and Defendants' failure to take action to ensure his safety. Mbewe claims that he was assaulted on July 10, 2012, and suffered a broken nose, wounds to his face, and a concussion. He further contends that he was again assaulted on July 22, 2012, and sustained wounds to the face. (ECF No. 25).

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were

insufficient. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the inmate must show a serious physical injury. *See De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).

Under 42 U.S.C. § 1983, an actual controversy must exist at all times while the case is pending. *See Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974). It is possible for events subsequent to the filing of the complaint to make an injunctive relief request moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). This is so even though such a case presented a justiciable controversy at an earlier point in time and an intervening event rendered the controversy moot. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996). Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained…" *See Lewis v. Continental Bank* Corp, 494 U.S. 472, On July 22, 2012, 80 (1990).

To the extent that Mbewe seeks injunctive relief, the claim for relief was mooted when he was transferred from MCIH. His claims for damages are subject to dismissal as he has failed to show that Defendants were placed on prior notice of a specific threat to his safety and failed to act on his claims. To the extent that he argues that the filing of his May 2012 ARP shows that correctional officers had prior knowledge of his safety claims, this was in fact investigated and found to be without merit. No detailed information regarding real or potential threats or future acts of physical harm was communicated to MCIH staff prior to the July 2012 incident. Plaintiff has been called upon to rebut Defendants' exhibits to bring forth specific, verified evidence

7

showing that Defendants were placed on actual notice of a threat to his safety. He has failed to do so.

For the aforementioned reasons, the court finds no Eighth Amendment violations. Defendants' motion, construed as a motion for summary judgment, shall be granted. A separate Order follows.


Date: August 20, 2013                                   /s/
                                         Alexander Williams Jr.
                                         United States District Judge